# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC. and | § | |
| UNILOC LUXEMBOURG, S.A., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| AVG TECHNOLOGIES USA, INC., | § | CIVIL ACTION NO.  2:16-CV-00393-RWS |
| | § | (LEAD) |
| Defendant. | § | |
| | § | |
| BITDEFENDER LLC, | § | CIVIL ACTION NO. 2:16-CV-00394–RWS |
| | § | |
| Defendant. | § | |
| | § | |
| PIRIFORM, INC. | § | CIVIL ACTION NO. 2:16-CV-00396-RWS |
| | § | |
| Defendant. | § | |
| | § | |
| UBISOFT, INC. | § | CIVIL ACTION NO. 2:16-CV-00397-RWS |
| | § | |
| Defendant. | § | |
| | § | |
| KASPERSKY LAB, INC., | § | CIVIL ACTION NO. 2:16-CV-00871-RWS |
| | § | |
| Defendant. | § | |
| | § | |
| SQUARE ENIX, INC., | § | CIVIL ACTION NO. 2:16-CV-00872-RWS |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant BitDefender LLC's Motion to Dismiss for Failure to State a Claim (Docket No. 23 in Case No. 2:16-cv-394[1]), which is joined by Defendant Piriform, Inc. (collectively with BitDefender LLC, "Defendants").[2]  Docket No. 20 in Case No. 2:16-cv-396. The Motion was fully briefed (*see* Docket Nos. 26, 29 and 32), and the Court held a hearing on Friday, December 2, 2016.  *See* Docket No. 91 in Case No. 2:16-cv-393 ("Tr.") at 2:1.  Defendants' Motion alleges that the asserted patent claims are drawn to ineligible subject matter under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank, Int'l*, 134 S. Ct. 2347 (2014).  For the reasons that follow, Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

This is a consolidation of six patent-infringement actions in which Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively, "Uniloc") assert infringement of U.S. Patent Nos. 6,510,466 ("the '466 Patent"), entitled "Methods, Systems and Computer Program Products for Centralized Management of Application Programs on a Network," and 6,728,766 ("the '766 Patent"), entitled "Methods, Systems and Computer Program Products for License Use management on a Network" (collectively, the "Asserted Patents").  *See* Docket No. 1 at ¶¶ 10, 22, 27, 29; Docket No. 39.  The Defendants are providers of software, and the accused products are Defendants' software licensing and delivery systems.  Docket No. 23 at 2.

The Asserted Patents relate to "application program management on a computer network." '466 Patent, col. 1:21–23; '766 Patent, col. 1:21-23.[3]  The computer network includes a server

---

[1] Unless specifically stated otherwise, "Docket No." refers to the docket in Case No. 2:16-cv-394.

[2] BitDefender's motion was originally also joined by Defendant AVG Technologies USA, Inc., which has since been dismissed.  *See* Case No. 2:16-cv-393, Docket No. 21 (joining motion); Docket No. 127 (dismissing AVG).

[3] Although the Asserted Patents are related to each other, their specifications are somewhat different.

supporting client stations and can be called a "client-server environment." Docket No. 26 at 2 (citations omitted). The client-server environment is characterized by the possibility than any given user may use different clients at different times. *See* '466 Patent at col. 1:44–56. In the context of the client-server environment, the claimed inventions of the Asserted Patents seek to centralize application management so that "the entire process [can] be controlled from a single point for an entire managed network environment." *Id.* at col. 3:35–36; '766 Patent, col: 3:35–36.

"Application management" is not explicitly defined in the Asserted Patents. However, the '466 Patent specification describes "an application management system for managing configurable application programs using both user and administrative preferences for various application programs." '466 Patent, col. 7:25–28. The specification further explains that "application management information may include configurable user preference information for the plurality of application programs," *id.* at col. 4:53–55, or may include "user, software, device, preference and access control information." *Id.* at col. 7:62–64. Application management thus includes many aspects of providing software to users in the context of a client-server environment. *See id.* at col 1:44–56.

Claim 1 of the '466 Patent provides:

**1.** A method for management of application programs on a network including a server and a client comprising the steps of:
installing a plurality of application programs at the server;
receiving at the server a login request from a user at the client;
establishing a user desktop interface at the client associated with the user responsive to the login request from the user, the desktop interface including a plurality of display regions associated with a set of the plurality of application programs installed at the server for which the user is authorized;
receiving at the server a selection of one of the plurality of application programs from the user desktop interface; and
providing an instance of the selected one of the plurality of application programs to the client for execution responsive to the selection.

Claim 1 of the '766 Patent provides:

**1.** A method for management of license use for a network comprising the steps of:

> maintaining license management policy information for a plurality of application programs at a license management server, the license management policy information including at least one of a user identity based policy, an administrator policy override definition or a user policy override definition;

> receiving at the license management server a request for a license availability of a selected one of the plurality of application programs from a user at a client;

> determining the license availability for the selected one of the plurality of application programs for the user based on the maintained license management policy information; and

> providing an unavailability indication to the client responsive to the selection if the license availability indicates that a license is not available for the user or an availability indication if the licensed availability indicates that a license is available for the user.

The '466 and '766 Patents address different aspects of application management in the client-server environment. The '466 Patent addresses installing application software on the server and providing instances of that software to the clients for execution. '466 Patent, col. 3:48–50. The '466 Patent further addresses establishing a user-specific desktop interface for clients from which users may select display regions associated with the application software. *See id.* at col. 4:39–44. By contrast, the '766 Patent addresses the management of licenses for the application software, including maintaining license-related policies and information in the client-server environment such that license availability can be communicated to clients on a user-specific basis. '766 Patent, col. 3:24–28, 3:40–45, 5:38–60.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, Plaintiffs must plead facts sufficient to allow the Court to draw a reasonable inference that Defendants are liable for the alleged patent infringement. *See id.* (citing *Twombly*, 550 U.S. at 556). At this stage, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the Plaintiffs. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

Eligibility Under 35 U.S.C. § 101

In determining whether a claim is patent-ineligible under *Alice*, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Claims directed to software inventions do not automatically satisfy this first step of the inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

If the Court determines that the claims are directed to an abstract idea, it then determines whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357. An inventive concept is "some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). The Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (internal quotation omitted). Even if each claim element, by itself, was known in the art, "an inventive concept can

be found in the non-conventional and non-generic arrangement of known, conventional pieces."

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350.

## ANALYSIS

<u>Asserted, Challenged and Representative Claims</u>

Defendants' motion originally challenged the patent-eligibility of all claims of the Asserted Patents, but Defendants subsequently limited it to challenge only the claims that Uniloc actually asserts: claims 1, 2, 7, 15 and 22 of the '466 Patent and claims 1, 3, 7, 9, 13 and 15 of the '766 Patent.[4]  Docket No. 29 at 2; Tr. at 15:8–12.  To the extent the motion challenges any other claim of the Asserted Patents, it is **DENIED** without prejudice.

Of the '466 Patent claims, claims 1 and 15 are independent, claims 2 and 7 depend from claim 1, and claim 22 depends from claim 15.  Docket No. 23 at 5.  Defendants assert that claim 1 is representative of claim 15 and claim 7 is representative of claim 22.  Docket No. 23 at 5–6.  In support of their assertion, Defendants state, "Claims 15 and 22, although drafted as systems, are identical in substance to Claims 1 and 7 for the purposes of this motion because Claims 15 and 22 merely recited the limitations of claim 1 in means-plus-function language."  *Id.* at 6.

Of the '766 Patent claims, claims 1, 7 and 13 are independent, claim 3 depends from claim 1, claim 9 depends from claim 7, and claim 15 depends from claim 13.  *See* Docket No. 23 at 7.  Defendants assert that claim 1 of the '766 Patent is representative of claims 7 and 13 and claim 3 is representative of claims 9 and 15.  In support of their assertion, Defendants state, "Claims 7 and 9, although drawn as means plus function claims, are identical in substance to Claims 1 and 3 for

---

[4] In its opposition, Uniloc represented that it is only asserting claims 1, 2, 7, 15 and 22 of the '466 Patent and claims 1, 3, 7, 9, 13 and 15 of the '766 Patent.  Docket No. 26 at 2.

purposes of this motion. Claims 13 and 15, although drawn as computer product claims, are identical in substance to Claims 1 and 3 for purposes of this motion." *Id.*

Defendants have not shown that the scope of the means-plus-function claims (claims 15 and 22 of the '466 Patent and claims 7, 9, 13 and 15 of the '766 Patent) is similar to the scope of the non-means-plus-function claims (claims 1 and 7 of the '466 Patent and claims 1 and 3 of the '766 Patent). *See Perdiemco, LLC v. Industrack LLC*, Case No. 2:15-cv-727, 2016 WL5719697, at *7 *adopted* 2016 WL 5475707 (E.D. Tex. Sept. 29, 2016) ("When the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are 'substantially similar and linked to the same abstract idea.' ") (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); citing also Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2004)). Generally, means-plus-function claims have a narrower scope than non-means-plus-function claims. *See* 35 U.S.C. § 112(f) (limiting the construction of means-plus-function terms to "the corresponding structure, material, or acts described in the specification and equivalents thereof"). As such, they may be patent-eligible even when similar non-means-plus-function claims are not. Because Defendants only make arguments with respect to the non-means-plus-function claims and have not shown the latter to be representative of the means-plus-function claims, the motion is **DENIED** without prejudice as to claims 15 and 22 of the '466 Patent and claims 7, 9, 13 and 15 of the '766 Patent.

Need for Claim Construction

The parties disagree as to whether claim construction is necessary to adjudicate the patent eligibility of the remaining claims. Docket No. 32 at 8. Uniloc argues that claim construction is required because Defendants' arguments that the claims are directed to "the idea of managing the

distribution of software over a network" and "preempt all ways of managing applications in a client-server environment" reflect an overgeneralized construction of the claims. *Id.* at 8–9. Uniloc further argues that the claims do not "monopolize every potential solution to the problem" addressed by the claims and that any dispute as to the scope of the claims should preclude dismissal under Section 101. *Id.* at 9.

The Court is not persuaded that there is a legitimate claim construction dispute in this case that would frustrate its ability to rule on the instant motions to dismiss. Uniloc's argument that the scope of preemption is incomplete is irrelevant because complete preemption is not required under *Alice*. *See* 134 S. Ct. at 2355. Significantly, neither Uniloc nor Defendants has proposed any construction of any term in the Asserted Patents, much less demonstrated that such a construction is plausible or favors Uniloc in this eligibility analysis. While some cases may require that the claims be construed before their eligibility can be assessed, this is not such a case.

*Alice* Step One

"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish*, 822 F.3d at 1334. "Rather, both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* In the context of software inventions, the Federal Circuit has instructed that claims directed to improvements in the functioning of a computer are not directed to an abstract idea. *Id.* at 1335. Conversely, claims may be directed to abstract ideas if they are directed to fundamental economic and conventional business practices. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015). Claims may also be directed to abstract ideas if "[t]hey do not claim a particular way of programming or designing the software to [accomplish the claimed

functionality], but instead merely claim the resulting systems" or if the claims "are not directed to a specific improvement in the way computers operate." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

Defendants contend that all of the asserted claims are directed to the idea of "managing the distribution of software over a network." Docket No. 23 at 12. In support of their contention, Defendants compare the instant claims to those in *Ultramercial*, 772 F.3d at 715, *Content Extraction*, 776 F.3d at 1347, *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 81 F.Supp.3d 356 (D. Del. Feb 24, 2015) and *Tranxition, Inc. v. Lenovo (United States) Inc.*, Case No. 3:12-cv-1065, 2015 U.S. Dist. LEXIS 89593, at *6 (D. Or. July 9, 2015). *Id.* at 12–15 (also citing *Landmark Tech.* at *8, *18; *Intellectual Ventures II*, 2015 U.S. Dist. LEXIS 56092, at *13–14, 49; *Neochloris, Inc. v. Emerson Process Management LLP*, 2015 U.S. Dist. LEXIS 138957, at *13 (N.D. Ill. Oct. 13, 2015)).

Defendants argue that the asserted claims are directed to abstract ideas because the component steps of the method claims are themselves abstract. *Id.* at 14–15. Defendants further argue that "distributing and maintaining software for network users" "has been recognized in the past, and is now [recognized as] a basic and fundamental process." *Id.* at 15. Finally, Defendants support their allegation that the asserted claims are abstract "by comparing computer elements with what a human can do manually without a computer." *Id.* at 15–17 (citing *Clear With Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F.Supp.3d 758, 765–66 (E.D. Tex. 2014)).

Plaintiffs respond that the asserted claims are not directed to an abstract idea because "the claims are directed to a specific implementation of a solution to a problem in the software arts." Docket No. 26 at 7 (quoting *Enfish*, 2016 U.S. App. LEXIS 8699, at *16). Plaintiffs further respond that the alleged abstract idea, "managing the distribution of software over a network,"

represents an over-generalization of the Asserted Patents. *Id.* Plaintiffs argue that the claims are not abstract because "the need for this type of [claimed] technology in the marketplace at the time it was invented is apparent." *Id.* at 8. Plaintiffs state that the "present inventions remedied [certain] deficiencies [in the prior art] by providing 'a seamless integration of application access and session characteristics across heterogeneous networks.' " *Id.* at 9 (citing '466 Patent, col 3:21–25). Plaintiffs recite several limitations of the asserted claims and state these limitations give rise to purported advantages of the claimed technology. *Id.* at 9–12. Plaintiffs also deny that the claimed methods can be performed by a human mind and argue that the methods are not directed to abstract ideas because they require a computer. *Id.* at 13–14.

Additionally, Plaintiffs argue that the claimed inventions of the '466 and '766 Patents improve the operation of a network of computers. *Id.* at 13. Plaintiffs state that the claimed technology of the '466 Patent "fill[s] a gap in the art at the time, in providing increased efficiency in the management of application programs in a client server environment to address the then new problem of user roaming in networks." *Id.* "The '766 Patent allows for a reduction in costs associated with license use management of application programs in a client server environment." *Id.*

Defendants reply that Asserted Patents do not improve the functioning of a computer under *Enfish* because their claims are not as specific as the *Enfish* claims, Docket No. 29 at 3, and because improved efficiency or reduced costs are not cognizable improvements to the functioning of a computer. *Id.* at 5 n.25. Plaintiffs' surreply asserts that their claims are non-abstract because their claims are not overly vague. Docket No. 32 at 2–3 (citing *ContentGuard Holdings, Inc. v. Amazon.com, Inc.* 142 F. Supp. 3d 510, 512–13 (E.D.Tex. 2015)). Plaintiffs also re-urge in surreply that Defendants' alleged abstraction is over-generalized. *Id.* at 4–6 (citations omitted).

The Court agrees with Plaintiffs that "managing the distribution of software over a network" describes the claims at too high a level of abstraction but disagrees that this is fatal to Defendants' motion. Defendants' description is not "untethered from the language of the claims" because it is derived from the preambles of claim 1 of the '466 Patent and claim 1 of the '766 Patent. *Cf. Enfish*, 822 F.3d at 1337. Moreover, Defendants have shown that the claims are directed to abstract ideas at a lower level of abstraction. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240 (Fed. Cir. 2016) ("An abstract idea can generally be described at different levels of abstraction.").

The '466 Patent is directed to providing a user-specific desktop interface that includes establishing display regions associated with application programs for which the user is authorized and, in response to the user's selection of one such display region, providing an instance of the application program to the user's client for execution. The claims do not improve the functioning of a computer or computer network because "increased efficiency in the management of application programs" is not a technological benefit. Additionally, the claims are overly vague because they recite "establishing a user desktop" with certain features without claiming any "particular way of programming or designing the software to create [user desktops] that have these feature." *Ameranth*, 842 F.3d at 1241.

The '766 Patent is directed to using "license management policy information" to provide an indication of whether a license is available to a user for an application program in response to a request for license availability. Claims to the maintenance of information and announcement of that information in response to a request have been found to be abstract. *See Elec. Power Grp., LLC v. Alston S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). Moreover, the '766 Patent is not directed to an improvement of a computer or computer network. Reduced costs associated with

license use management in a client server environment, like increased efficiency, is a business benefit rather than a benefit to the client server environment itself.

In sum, the claims of the Asserted Patents are directed to abstract ideas. Because step one of the *Alice* inquiry is satisfied, the Court proceeds to step two.

<u>*Alice* Step Two</u>

At the second step of the *Alice* eligibility inquiry, the Court evaluates "whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer" (i.e., provide an inventive concept). *Alice*, 124 S. Ct. at 2359. The Court first analyzes the claim elements separately and then as an ordered combination. *Id.* at 2359–60.

**'446 Patent, Claim 1**

Defendants argue that the individual limitations of claim 1 of the '466 Patent do not provide an inventive concept. They argue that even if the preamble is limiting, it does not provide an inventive concept because similar preambles have not been held to provide an inventive concept and the preamble of claim 1 recites only generic equipment being used in a conventional manner. Docket No. 23 at 18–19. They next contend that the first step recites routine activity—installing computer software—on a generic computer, the "server." *Id.* at 19. According to Defendants, the second step also recites generic computer components (i.e., "server" and "client") performing an allegedly abstract idea of logging into a network. *Id.* Defendants also characterize the third step— providing the user interface—as an abstract idea and argue that, therefore, it also does not provide an inventive concept. *Id.* at 20. Finally, Defendants characterize the fourth and fifth steps— communicating the user's selection to a server and providing a copy of the program, respectively— as abstract ideas. *Id.* Defendants also argue that the asserted claims are not like those in *DDR Holdings* because the claims in that case solved a problem specific to the Internet as opposed to

the claims in this case, which "describe a widely-understood and well-known abstract idea— managing the distribution of software over a network—and then implement the abstract idea using conventional computer components." *Id.* at 23. Defendants also distinguish the claimed invention of the '466 Patent from the "technology-based solution" of *Bascom* because the instant claims rely only on generic computer technology. *Id.* at 29–30.

Plaintiffs respond that Defendants ignore that "[t]he 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations" and "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." Docket No. 26 at 14 (citing *Bascom*, 2016 LEXIS 11687, at *18). Plaintiffs state that "[t]he inventive concept inherent in the '466 Patent allows for a variety of application programs to be maintained at the server and an instance of a selected one of the application programs to be provided as needed to a user logged onto a client device." *Id.* at 14. Plaintiffs further state that certain limitations of the '466 Patent claims "allow[] for individual application programs to be provided to the user as needed where they are executed at a client device." *Id.* at 15. Plaintiffs also compare the claims to those in *DDR Holdings* and *Bascom* and argue that the claims of the '466 Patent are patent-eligible because they are limited to a discrete implementation for centralized management of applications. *Id.* at 15–18.

In reply, Defendants argue that "[t]he limitations of the Asserted Claims considered as an ordered combination do not add anything significantly more to transform the Asserted Claims to patent eligibility." Docket No. 29 at 8. Defendants assert that the specifications of the Asserted Patents "make clear that, even considered as an ordered combination, there is nothing 'discrete' in the limitations recited in the Asserted Claims." *Id.* The ordered combination contains no inventive concept, Defendants argue, because even as combined, the limitations "function as expected in an

entirely predictable fashion and in accordance with the conventional use at the time of the invention." *Id.* at 8–9 (citing *Tridia Corp. v. Lead Case Sauce Labs*, 2016 U.S. Dist. LEXIS 99878, at *23 (N.D. Ga. 2016)).

Plaintiffs argue in surreply that Defendants have provided no evidence that the claims are directed toward "conventional computer, network, and display technology." Docket No. 32 at 7 (citing Docket No. 29 at 4). Plaintiffs further argue that the asserted claims supply an inventive concept like those in *SimpleAir, Inc. v. Google Inc.*, 136 F. Supp. 3d 745 (E.D. Tex. 2015).

The individual limitations of claim 1 of the '466 Patent fail to provide an inventive concept. Defendants have shown that each limitation enumerates a routine function of computers. Although the Court credits the specification in listing purported advantages of the claimed invention, s*ee Enfish*, 822 F.3d at 1337 (discussing purported benefits of the claimed invention over the prior art), Plaintiffs provide no authority for their argument that these advantages can constitute an inventive concept in themselves. A claim may be sufficiently limited that it has an inventive concept under *Alice* even if the claimed invention has no advantages over the prior art, and a claimed invention may have advantages over similar prior art inventions but be claimed in an insufficiently limited way to confer eligibility under *Alice*.

Moreover, the purported advantages of the claimed invention are not stated in the claims, and unclaimed advantages cannot, in themselves, constitute an inventive concept because any inventive concept must be found in the claims. *See Bascom*, 827 F.3d at 1349 ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*, 134 S. Ct. at 2355). Plaintiffs attempt to tie the purported advantages listed in the specification to certain limitations of claim 1. Even if Plaintiffs are correct that one or more individual claim limitations is responsible for a certain advantage discussed in

the specification, claim 1 is still patent-ineligible.  The existence of other, less advantageous ways of accomplishing similar goals, in this case maintaining Electronic Health Records, may be evidence that the claims do not preempt every form of Electronic Health Record, but maintaining an Electronic Health Record is not the abstract idea to be limited.  Rather, organizing data in a hierarchical format is the abstract idea to be limited,[5] and the fact that there may be other ways of making an Electronic Health Record is irrelevant to whether the '466 Patent meaningfully limits that idea.

Finally, the ordered combination of limitations also fails to provide an inventive concept under *Bascom* and *DDR Holdings*.  There is no inventive concept because, unlike the claims in *Bascom*, the claims here rely upon only generic computer components used in a routine arrangement.  Specifically, the "client" and "server" are generic computers, and they are set up in a generic client-server arrangement.  *See, e.g.*, '466 Patent, col. 1:57–2:11 (describing prior art client-server environments).  The traditional arrangement of computer components in the instant claims distinguishes this case from *Bascom*, in which the non-generic arrangement of otherwise generic computer components provided the inventive concept behind the unique Internet-filtering solution.  *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

*DDR Holdings* also supports the conclusion that claim 1 of the '466 Patent provides no inventive concept.  In that case, the Federal Circuit upheld patent-eligibility of the claims at step two of the *Alice* inquiry because they solved a problem unique to the Internet with no brick-and-mortar analog.  *DDR Holdings*, 773 F.3d at 1257–58.  The Federal Circuit "caution[ed], however,

---

[5] The Court rephrases the abstract idea here to emphasize that the medical nature of the claimed invention is a field of use restriction and does not contribute to an inventive concept.  *See Parker v. Flook*, 98 S. Ct. 2522, 2528–29 (1978).

that not all claims purporting to address Internet-centric challenges are eligible for patent" and contrasted the claims to those in *Ultramercial*, which "broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity)." *Id.* at 1258. The Federal Circuit further stated that the *DDR Holdings* claims "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.*

In this case, the claimed "display regions" operate conventionally by triggering the client to interact with a server such that the server provides an instance of the linked-to content to be executed by the client. Moreover, Defendants' human performance example shows that distributing software in a client-server network environment has the preexisting analog of distributing software by hand. Thus, the '466 Patent claims share more of the characteristics of the invalid claims from *Ultramercial* than the valid claims from *DDR Holdings*. Claim 1 of the '466 Patent does not provide an inventive concept.

**'466 Patent, Claims 2 and 7**

Claim 2 of the '446 Patent depends from claim 1 and provides two additional limitations. The first, "maintaining application management information for the plurality of applications at the server," contains no independent inventive concept because it constitutes electronic recordkeeping. *See Uniloc USA, Inc. v. E-MDs, Inc.*, Case No. 6:14-cv-625, 2015 WL 10791906, at *4 (E.D. Tex. Aug. 19, 2015). The second, "wherein the establishing step includes the step of including a plurality of display regions associated with a set of the plurality of application programs for which the user is authorized responsive to the application management information," only limits the "establishing" step of claim 1 by requiring that the "establishing" be "responsive to the application management information." In other words, claim 2 requires that the "application management

information" that is maintained at the server to also be used in establishing the desktop without specifying how such information is to be used. Generic instructions to maintain and use a certain kind of information—especially as broad a class of information as "application management information," *see supra*—do not provide an inventive concept. *Id.*; *see also See Elec. Power Grp.*, 830 F.3d at 1353–54.

Claim 7 also depends from claim 1 and limits the "establishing" step. Specifically, claim 7 calls for "configuring the user desktop interface responsive to an identifier of the user associated with the login request so as to provide associated information for the user desktop interface; and providing the user desktop interface and the associated information for the user desktop interface to the client for display." Claim 7 requires maintaining user-specific desktop-configuration information and providing that information in response to an identifying aspect of the user login so that the client can use it in "establishing" the desktop interface. As with claim 2, neither the claim nor the specification identifies a specific "identifier of the user," how that identifier might be "associated with the login request," or how the client might employ the information in establishing the user desktop interface. As such, claim 7 also fails to provide an inventive concept because it only amounts to generic instructions to maintain and employ information. *Id.*

Accordingly, claims 2 and 7 of the '446 Patent are drawn to ineligible subject matter.

**'766 Patent, Claim 1**

Defendants argue that claim 1 of the '766 Patent contains no inventive concept. They argue that "[r]egardless of whether the preamble of Claim 1 is limiting, it fails to recite structure that does any more than implement the abstract idea on a generic computer." Docket No. 23 at 20. They contend that the first step, "maintaining license policy information . . . at a license management server," "merely recites the abstract idea of maintaining a list of license information

for software." *Id.* at 21. Defendants also characterize the second step, "receiving . . . a request for a license availability," as an abstract idea. *Id.* Similarly, Defendants state the third step, "determining the license availability," merely recites an abstract idea. *Id.* at 22. Defendants also characterize as abstract the fourth step, "providing an unavailability . . . or an availability indication." *Id.* Finally, Defendants argue that "whether alone or in an ordered combination, the claimed steps recited above do not disclose an inventive concept." *Id.* at 22–23.

Plaintiffs argue that claim 1 of the '766 Patent does include an inventive concept. They state that specific limitations of the claimed invention confer advantages on the user relative to the prior art. Docket No. 26 at 15, 17. Plaintiffs further argue that claim 1 is like the claims in *DDR Holdings* because both are "directed to a method of communicating information to and from a computer server." *Id.* at 16.

As discussed above, just because an invention may have some advantages over the prior art does not necessarily mean that claims reciting one or more aspects of that invention contain an inventive concept. Moreover, the holding of *DDR Holdings* does not apply to the '766 Patent because the problem the claimed invention purports to solve is not sufficiently tied to computers or the Internet. Maintaining, querying and relaying license policy information is a task humans accomplished before the advent of computers.

The Court agrees with Defendants that claim 1 of the '766 patent does not contain an inventive concept. This Court has held that maintaining, querying and relaying information is electronic recordkeeping. *See E-MDs*, 2015 WL 10791906, at *4. Similarly, the Federal Circuit has held that "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas." *Elec.*

*Power Grp.*, 830 F.3d at 1355.  As with the claims in *Electric Power Group*, the claims in this case "do not require a new source or type of information, or new techniques for analyzing it."  *See id.* Rather, claim 1 requires only that standard "license management policy information" be maintained and used, in response to a request, to determine and provide an indication of the license availability using standard techniques.  Accordingly, claim 1 of the '766 Patent does not contain an inventive concept and is drawn to ineligible subject matter.

**'766 Patent, Claim 3**

Claim 3 of the '766 Patent depends from claim 1 and specifies that the "license management server is an on demand server associated with the client which provides an instance of the selected one of the application programs to the client for execution."  First, that the client and server are associated with one another and that the server provides an instance of the selected one of the application programs to the client for execution are already features of claim 1.  The only new limitation in claim 3 is that the license management server is an on demand server.  The specification of the '766 Patent defines "on-demand server" as "a server delivering applications as needed responsive to user requests as requests are received."  '766 Patent, col. 6:51–53. Accordingly, the "on-demand server" is a generic server performing the routine functions of a server.  *See id.* at col. 14:51–56.  Moreover, the traditional client-server relationship is not disturbed by providing that the same server must act as the license management server and on-demand application server.  To the contrary, claim 3 reinforces that claim 1 does not require a special or separate "license management server" but merely requires license management functionality to be present in the one, generic server.  *See id.* at col 14:40–44 ("[T]he above-described aspects of the present invention . . . may be provided by hardware, software, or a

combination of the above.").  Accordingly, claim 3 provides no inventive concept and is drawn to patent-ineligible subject matter.

## CONCLUSION

Defendants have not shown the patent-ineligibility of the challenged means-plus function claims.  However, they have shown the patent-ineligibility of claims 1, 2 and 7 of the '466 Patent and claims 1 and 3 of the '766 Patent.  Accordingly, it is

**ORDERED** that the Motions to Dismiss (Docket No. 23 in Case No. 2:16-cv-394 and Docket No. 20 in Case No. 2:16-cv-396;) be **GRANTED-IN-PART** with respect to claims 1, 2 and 7 of the '466 Patent and claims 1 and 3 of the '766 Patent and **DENIED-IN-PART** in all other respects without prejudice to refiling after claim construction.

**SIGNED this 28th day of March, 2017.**


*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE